**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AYOUBA CAMARA,**<br>**Petitioner,**<br><br>**v.**<br><br>**J.L. JAMISON, JOHN E. RIFE, MARKWAYNE MULLIN, U.S. DEPARTMENT OF HOMELAND SECURITY,**<br>**Respondents.** | **CIVIL ACTION**<br><br><br><br>**NO. 26-6552** |

**MEMORANDUM**

**HODGE, J.** **October 8, 2026**

## I. INTRODUCTION[1]

Petitioner Ayouba Camara ("Petitioner" or "Mr. Camara") brings this Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Mr. Camara was detained by Immigration and Customs Enforcement ("ICE") on August 28, 2026, without a clear statutory justification for his detention under the Immigration and Nationality Act ("INA"). Irrespective of whether he was detained pursuant to the mandatory detention provision in Section 235 of the INA, 8 U.S.C. § 1225(b)(2), or the discretionary detention provision in Section 236, 8 U.S.C. § 1226(a), Petitioner submits that he has been wrongfully detained because he was deprived of procedural and substantive due process under the Fifth Amendment. (ECF No. 1 ¶¶ 54–70.) He further contends that his detention violates the Administrative Procedure Act ("APA"). (*Id.* ¶¶ 71–85.) J.L Jamison, Warden of the Federal Detention Center-Philadelphia; John E. Rife, Acting Field Office Director of the ICE Philadelphia Field Office; Markwayne Mullin,

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Secretary of the Department of Homeland Security; and the U.S. Department of Homeland Security ("DHS") (collectively, "Respondents") oppose habeas relief. (ECF Nos. 5, 8, 9.)

For the reasons set forth below, the Court grants Mr. Camara's Petition because his detention not only circumvents but also offends due process. In light of this dispositive ruling, the Court does not address Mr. Camara's remaining claims, including his APA claims and relief related thereto.[2]

## II. BACKGROUND

Respondents do not dispute the facts as stated in Mr. Camara's Petition, and, therefore, the Court accepts them as true. (*See* ECF Nos. 5, 9.) Furthermore, the Court relies on the limited documentation provided by the parties as to the process afforded to Petitioner contemporaneously with and following his arrest and subsequent continued detention.[3]

Mr. Camara is a native of Guinea. (ECF No. 1 ¶¶ 1, 19.) He is a rare-language speaker of the West African language Mandingo, which often lacks available interpreters, making it difficult for immigration courts to accommodate.[4] (*Id.* ¶ 22.) Mr. Camara arrived in the United States on or

---

[2] Respondents indicate that Petitioner's claims are subject to a class action complaint currently pending before Judge Diamond. *See Soumare v. Jamison et al.*, No. 26-cv-04332 (E.D. Pa. June 24, 2026), Dkt. No. 1. However, that complaint raises only the APA claims not addressed in this memorandum opinion. *Id.* ¶¶ 152–68. Since the Court does not reach Petitioner's APA claims, the existence of a proposed class action is inconsequential to the current matter.

[3] The Court recognizes and emphasizes that the unique factual circumstances of a Petition are critical to whether an arrest and detention comply with both Petitioner's constitutional rights and the statutory provisions of the INA. Such key facts distinguish each matter from others adjudicated by the district courts in this and other Circuits around the country.

[4] Petitioner believes that future hearings in his removal and asylum proceedings have not been scheduled "due to access to an appropriate interpreter" in his native language. (ECF No. 1 ¶ 22.) The Court shares these concerns, particularly as to DHS and ICE's ability to ensure that Mr. Camara meaningfully understands the basis for his detention and any explanations of his rights. This concern is evidenced by the Form I-286 indicating that the notice was read to Mr. Camara in French, a language that the Court, at this time, is not aware that Petitioner speaks, reads, or comprehends. (ECF No. 9-1 at 2.)

about February 24, 2023. (*Id.* ¶ 19.) He was detained by DHS officers at the United States-Mexico border and, on February 28, 2023, released on recognizance to family in Philadelphia, Pennsylvania, pending removal proceedings. (*Id.* ¶¶ 19–20; *see also* ECF No. 1-1) Upon his release, Mr. Camara settled in Philadelphia with his family, where he established community. (ECF No. 1 ¶¶ 19–20.) He complied with the conditions of his release and removal proceedings and attended each scheduled hearing and ICE check-in appointment. (*Id.* ¶ 22.) He has a pending application for asylum, and he received employment authorization in 2024. (*Id.*; *see also* ECF Nos. 1-1, 1-2.) The parties have not made the Court aware of any criminal history for Mr. Camara, so the Court reasonably infers that one does not exist. *See Salinas Jaigua v. Jamison*, No. 25-cv-07115 (E.D. Pa. Dec. 29, 2025), Dkt. No. 7.

On August 28, 2026, Petitioner arrived at the Philadelphia ICE field office for a regularly scheduled check-in appointment. (ECF No. 1 ¶ 23.) Without warning or any apparent material change in circumstances, DHS officials arrested Mr. Camara and detained him at Federal Detention Center-Philadelphia (the "FDC"), where he remains. (*Id.* ¶¶ 23–24.) Shortly thereafter, Mr. Camara filed the instant Petition, seeking his immediate release from custody or, in the alternative, a bond hearing in which Respondents bear the burden of justifying his continued detention. (*See generally id.*)

The Court promptly ordered Respondents not to transfer Mr. Camara out of this District while the Petition is pending and further ordered Respondents to file a response to the Petition. (ECF No. 2.) Respondents initially responded on September 8, 2026, apparently conceding that Petitioner could not be lawfully detained under § 1225(b)(2) following the Third Circuit's decision in *Buele Morocho v. Warden Phila. FDC*, Nos. 26-1150, 26-1454, 2026 WL 2546223 (3d Cir. Aug. 28, 2026), but requesting additional time to file supplemental briefing on Petitioner's

constitutional and APA claims. (ECF No. 5 at 1–2.) The Court immediately ordered that Respondents file supplemental briefing by September 11, 2026, addressing the factual and statutory basis for Petitioner's detention. (ECF No. 6.) Respondents timely filed a supplemental response indicating that Petitioner had been detained pursuant to § 1225(b)(2). (ECF No. 8 at 1–2.) They further represented that ICE had recently begun "convert[ing] the detention status of numerous noncitizens from section 1225(b)(2) to section 1226(a)" but that ICE had "not yet been able to provide clarification about Mr. Camara's detention status." (*Id.*) On September 15, 2026, Respondents submitted an additional supplemental filing to the Court, indicating that ICE provided a Form I-286 in which Petitioner "requested a bond determination before an Immigration Judge." (ECF No. 9 at 2.) Therefore, Respondents stated, "the basis for Mr. Camara's detention is no longer pursuant to section 1225(b)(2), but rather pursuant to section 1226(a), consistent with *Buele Morocho*."[5] (*Id.*) Respondents note that they received Mr. Camara's Form I-286 on September 14, 2026, but the notice itself is dated September 8, 2026.[6] (*Compare id.*, *with* ECF No. 9-1 at 2.) Respondents identify but provide no justification for this inconsistency. (ECF No. 9 at 2 n.1.)

---

5 Section 1226(a) provides: "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See also Buele Morocho*, 2026 WL 2546223, at *1 ("§ 1226(a) permits discretionary release on bond pending removal proceedings so long as the noncitizen is not a danger or flight risk."). 8 U.S.C. § 1357(a)(2) permits the arrest without a warrant of "any alien in the United States, if [the DHS officer] has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." In such circumstances, the alien must "be taken ***without unnecessary delay*** for examination before an officer of [DHS] having authority to examine aliens as to their right to enter or remain in the United States." *Id.* (emphasis added). The implementing regulations specify that this determination as to "whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued" must, except in limited circumstances not applicable here, be made "***within 48 hours of the arrest***." 8 C.F.R. § 287.3(d) (emphasis added).

6 The Form I-286 filed on the docket states that the notice was read to Mr. Camara in French rather than in his native language of Mandingo. (ECF No. 9-1 at 2.)

Petitioner filed reply briefs to Respondents' initial response as well as to Respondents' supplemental filing addressing Petitioner's due process and APA claims. (*See* ECF Nos. 7, 10.)

Mr. Camara has been held at the FDC for over forty days since his arrest on August 28, 2026. Mr. Camara was not provided with a Notice of Custody Determination until at least eleven days thereafter. Further, to the Court's knowledge, despite Mr. Camara requesting review of his custody determination by an immigration judge, no such hearing has yet been scheduled.

## III. LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

## IV. DISCUSSION

The Due Process Clause provides that "[n]o person" shall "be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, *including aliens*, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (emphasis added). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Indeed, "mandatory detention implicates [habeas] Petitioners' 'constitutionally protected interest in avoiding physical restraint.'" *Buele Morocho*, 2026 WL 2546223, at *9 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). "Due process in the civil immigration detention context requires procedures that are reasonably calculated to avoid erroneous deprivation of liberty." *Regalado-Nauta v. Jamison*, No. 26-cv-06834, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026)

(Beetlestone, C.J.) (first citing *Mathews v. Elridge*, 424 U.S. 319, 333–35 (1976); and then citing *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331–32 (3d. Cir 2021)).

The question before the Court is whether Mr. Camara's current civil immigration detention without bond violates due process, particularly in light of the fact that he has resided in the United States for over three years with no criminal record. *See Buele Morocho*, 2026 WL 2546223, at *9. To evaluate Petitioner's claim, the Court considers the three factors announced by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976):

> (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Buele Morocho*, 2026 WL 2546223, at *9 (citation modified) (quoting *Mathews*, 424 U.S. at 335). The Court finds that his current civil immigration detention contravenes the due process to which he is entitled.[7] The Court addresses each *Mathews* factor in turn.

First, Petitioner has an essential private interest in maintaining personal liberty free from detention.[8] *See Zadvydas*, 533 U.S. at 690; *see also Rodrigues v. Jamison*, No. 26-cv-01407, 2026 WL 676468, at *5 (E.D. Pa. Mar. 10, 2026) ("[Petitioner] has a strong liberty interest in being free

---

7 The Court does not address the question of whether Mr. Camara was properly detained under the INA because that issue is not raised in the Petition. However, irrespective of Respondents' compliance—or lack thereof—with the statutory requirements of § 1226(a), the Government must still comply with the Constitution and the due process rights enumerated therein, to which *all persons* in the United States are entitled. *See Zadvydas*, 533 U.S. at 693. While Petitioner's initial arrest and detention may or may not comport with § 1226(a), Petitioner's continued detention violates his constitutional guarantee of procedural due process.

8 Respondents' argument that "there is no fundamental liberty interest in immunity from detention during removal proceedings" not only profoundly misunderstands the law of this Circuit, *see Buele Morocho*, 2026 WL 2546223, at *9, but also stands in harsh contrast to the arguments made in other, nearly identical cases. *See Regalado-Nauta*, 2026 WL 2740528, at *4 ("Respondents concede that [Petitioner] has a liberty interest in being free from detention.").

from mandatory detention.”). Here, where Petitioner could “be detained for months or even years while his case proceeds,” “the restriction of liberty is particularly acute.” *Regalado-Nauta*, 2026 WL 2740528, at *4 (quoting *Cunin v. McShane*, No. 25-cv-01887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025)). Mr. Camara has been deprived of his personal liberty for *forty-one days and counting* since his detention on August 28, 2026, and that interest remains implicated by his continued detention without an individualized custody determination or a bond hearing. The first *Mathews* factor weighs in favor of Mr. Camara.

Second, there is a significant risk that Petitioner has been erroneously deprived of his fundamental liberty interest. *See Buele Morocho*, 2026 WL 2546223, at *9 (“[T]he absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving Petitioners of their liberty interest.” (citations omitted)); *see also Leng Mey Ma v. Barber*, 357 U.S. 185, 190 (1958) (“Physical detention of aliens . . . is generally employed only as to security risks or those likely to abscond.”). DHS and ICE officers detained Mr. Camara without a warrant, and Mr. Camara has not yet been provided with an immigration hearing. Respondents do not argue that Petitioner poses a flight risk or danger to the community. (ECF No. 9 at 7); *see also De Los Santos Medina v. Jamison*, No. 26-cv-06800, 2026 WL 2742071, at *6 (E.D. Pa. Sept. 16, 2026) (Rufe, J.) (“The risk [of erroneous deprivation] is particularly pronounced where, as here, there is no indication that Petitioner is a danger to the community or a flight risk.”). Rather, Respondents contend that “the risk of erroneous deprivation of Petitioner’s interest is low given the availability of a bond hearing before an immigration judge.” (ECF No. 9 at 7.) However, no such hearing has occurred or even been scheduled. Accordingly, Mr. Camara’s current detention risks erroneously depriving him of his rights, and thus, the second *Mathews* factor weighs in favor of Mr. Camara.

Third, the federal government has an important interest in immigration enforcement and public safety. (ECF No. 9 at 7.) In particular, the government has a "legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings." *Buele Morocho*, 2026 WL 2546223, at *10. However, this interest fails to outweigh the first two factors where the Petitioner poses neither a flight risk nor a danger to the community. *See id.* On the contrary, the evidence suggests that Mr. Camara has regularly attended his scheduled ICE check-in appointments and intends to remain in Philadelphia with his family. *See also Regalado-Nauta*, 2026 WL 2740528, at *4 ("[Petitioner], like the petitioners in *Buele Morocho*, is a 'non-criminal individual who was detained absent evidence that he is dangerous or a flight risk.' [Petitioner] presents no risk of failing to appear at future hearings. Indeed, he has regularly reported to ICE check-ins since his initial detention in 2022." (quoting *Buele Morocho*, 2026 WL 2546223, at *10)); *De Los Santos Medina*, 2026 WL 2742071, at *6 (finding that "the government's interest in Petitioner's detention is weak" where Petitioner had no criminal record and had a "history of compliance with release condition," and the government did not argue that he was "a danger to the community or a flight risk").

In short, all the *Mathews* factors weigh in favor of granting the Petition because Mr. Camara has been detained without a bond hearing or an individualized custody determination in contravention of his due process rights. A post-detention bond hearing has not yet been scheduled, and, in any event, "is not an adequate substitute for the pre-detention individualized assessment that due process requires . . . ." *De Los Santos Medina*, 2026 WL 2742071, at *7 (citing *Cruz-Reyes v. Bondi*, 818 F. Supp. 3d 875, 885–86 (S.D. Tex. 2026)). Indeed, "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Therefore, the Court concludes that

"immediate release is the only appropriate remedy." *Regalado-Nauta*, 2026 WL 2740528, at *4; *see also De Los Santos Medina*, 2026 WL 2742071, at *7 ("As Petitioner's present detention is unconstitutional, the proper remedy is release.").

## V. CONCLUSION

For the foregoing reasons, Mr. Camara's detention without a bond hearing or an individualized custody determination offends the Due Process Clause of the Fifth Amendment. Therefore, this Court grants Mr. Camara's Petition, orders his immediate release, permanently enjoins the Government from re-detaining him under § 1225(b)(2), and temporarily enjoins the Government from re-detaining him under § 1226(a) for ten (10) days following his release.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**